# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| MARLA P.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 21-1095-JWL |
| KILOLO KIJAKAZI,[2] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.    Background**

Plaintiff protectively filed applications for DIB and SSI benefits on June 24, 2019. (R. 15, 262, 264). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating Plaintiff's allegations of symptoms (tremors, pain, and weakness in her extremities) resulting from her conversion disorder pursuant to Social Security Ruling (SSR) 16-3p and failed to assess a residual functional capacity (RFC) "with sufficient limitations supported by substantial evidence." (Pl. Br. 8).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he[3] applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

---

[3] The record is unclear whether the ALJ, Kim D. Parrish, is a man or a woman. In both Brief's the parties' counsel refer to the ALJ as "her" or "she." (Pl. Br. 8) (Comm'r Br. 1). However, at the telephone hearing Plaintiff referred to the ALJ in the masculine without correction. (R. 45-46). Therefore, the court will follow Plaintiff's precedent. If in error, the court asks ALJ Parrish to accept its apology.

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

**II. Discussion**

Plaintiff claims that in his RFC assessment the ALJ failed to include sufficient limitations "to account for the limitations related to [Plaintiff]'s tremors, a symptom manifested through her conversion disorder." (Pl. Br. 9).  Plaintiff argues the record

4

evidence reveals and corroborates her testimony that she has tremors, uses a cane, has weakness in her lower extremities, and has a poor memory. (Pl. Br. 9-10). She then argued

> The ALJ discounted [Plaintiff]'s allegations of tremors – a manifestation of her conversion disorder – almost entirely, however, because []he found [Plaintiff} could control or at least partially suppress the tremors when she so desired, because [Plaintiff] gave inconsistent accounts of incidents to her providers, and because of the normal objective evidence. (Tr. at 22-27). While the ALJ provided an extensive assessment of [Plaintiff]'s conversion disorder, the assessment demonstrated a misunderstanding of the disorder, rendering her SSR 16-3p analysis and SSR 96-8p analysis unsupported by substantial evidence.

Id. at 10.

Plaintiff cites this court's decision in Harris-Jackson v. Astrue, Civ. A. No. 11-1411-JWL, 2013 WL 27640 (D. Kan. Jan. 2, 2013) and argues that as in that case the ALJ here "failed to 'grasp the medical significance of and [] adequately consider the effects' of the admittedly severe impairment of conversion disorder." (Pl. Br. 11) (quoting Harris-Jackson, 2013 WL 27640 at *7). She argues that the ALJ's reliance on Plaintiff's "exaggerated symptoms and [the] lack of objective medical evidence to support [Plaintiff's] allegations illustrated [the ALJ's] misunderstanding of [Plaintiff]'s conversion disorder." Id. She argues the ALJ found Plaintiff's tremors voluntary thereby implying

> they were more akin to a factitious disorder or malingering. The ALJ's reliance on this one statement in the record to support h[is] conclusions demonstrated an isolated interpretation of the record, in error. Harris-Jackson, 2013 WL 27640, at *9 (the ALJ found evidence of malingering or feigned effort in only three places in a 950-page record, but the providers indicated that [Harris's] presentation represented a psychiatric disorder).

5

(Pl. Br. 12). She points out that no medical or psychological professional opined that she was "malingering or that her symptoms related to conversion disorder were not credible" and the implication her "tremors were voluntary was not supported by substantial evidence of record." Id. She argues the ALJ spent

> five to six pages of the RFC assessment outlining h[is] reasons for downplaying tremors as related to conversion disorder despite finding this impairment severe at step two. While the ALJ repeatedly implied that []he did not find [Plaintiff]'s tremors and other symptoms related to her conversion disorder credible, []he did so without the support of any medical evidence.

Id. at 13.

Plaintiff points out the ALJ here cited quite similar evidence as that used in Harris-Jackson to demonstrate inconsistencies between Plaintiff's allegations of symptoms and other record evidence and argues "that the ALJ's discussion of evidence 'ignores that much of what is present in the evidence here is precisely what one would expect when one is confronted with the medical records of an individual with a somatoform disorder.'" Id. at 13-14 (quoting Harris-Jackson, 2013 WL 27640, at *8).

In her response Brief, the Commissioner argues the ALJ reasonably found Plaintiff's allegations of symptoms inconsistent with other evidence and reasonably considered the opinion of nurse Brewer and the prior administrative medical findings of the state agency physicians. She points out that the ALJ found Plaintiff's conversion disorder is a severe disorder at step two of the evaluation process but that its severity does not meet or equal the severity of a Listed impairment at step three. (Comm'r Br. 7). She argues that although conversion disorder is a mental impairment "it manifested itself

6

through physical symptoms such as tremors.  Therefore, the ALJ reasonably considered" factors such as "activities of daily living, the objective evidence, inconsistencies between the claimant's reports and the reports of her friends and family members, and inconsistent reports made to different physicians about the same incidents or injuries" when "evaluating whether the medical evidence showed that her tremor impacted her ability to work."  (Comm'r Br. 7).  She then points out how the ALJ cited these factors to show Plaintiff's limitations are not as severe as she alleged.  Id. at 8-10.  The Commissioner argues that here, unlike in Harris-Jackson, "the ALJ acknowledged Plaintiff's conversion disorder and explained h[is] symptom analysis" and had before him the prior administrative medical findings which considered the severity of Plaintiff's conversion disorder "and reasonably concluded that Plaintiff was even more limited."  Id. at 11.  She argues the ALJ's evaluation of Plaintiff's allegations of symptoms is entitled to deference and suggests "Plaintiff's arguments that the ALJ's findings were flawed and should have included additional limitations are merely an improper invitation to the Court [sic] to reweigh the evidence and substitute its own judgment for the ALJ and must be rejected." Id. at 12 (citing Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 1157 (2019); Lax 489 F.3d at 1084).

### A.     **Standard for Evaluating a Claimant's Allegations of Symptoms**

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[4]

---

[4] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R.

8

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B.      Analysis

Plaintiff does not argue that the ALJ applied the incorrect legal standard to evaluate her allegations of symptoms, that he missed certain evidence in his evaluation, or that the inconsistencies relied upon are not present.  Rather she argues that as in the case of Harris-Jackson the ALJ here misunderstood a conversion disorder and erroneously relied upon the fact it is a mental impairment, thereby resulting in an erroneous evaluation of Plaintiff's allegations of symptoms and an erroneous RFC assessment.

---

§ 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. Appx. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on December 16, 2020, when this case was decided.  Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

As Plaintiff correctly suggests, this court in <u>Harris-Jackson</u> found evidence the ALJ in that case relied upon to discount Plaintiff's allegations of symptoms "is precisely what one would expect when one is confronted with the medical records of an individual with a somatoform disorder" such as a conversion disorder.  2013 WL 27640, at *8.  The court also noted that evidence of feigned symptoms or of malingering upon which the ALJ also relied would indicate factitious disorder or malingering which are not somatoform disorders, but that such evidence appeared only three times in a 950-page record.  <u>Id.</u> at *9.  The court noted, "the fact that the objective medical evidence does not confirm the physical symptoms does more to suggest that there is a somatoform disorder than it does to suggest that Plaintiff is not credible or that she is feigning or malingering."  <u>Id.</u>  The court noted that when dealing with somatoform disorders, "[i]t is mostly irrelevant that the objective medical evidence does not support Plaintiff's symptoms."  <u>Id.</u>

But the situation here is much different than that presented in <u>Harris-Jackson</u>.  The decision in that case was a decision on remand after a previous court remand and the court found that the ALJ failed to follow the remand order, despite that the Appeals Council vacated the earlier decision and remanded "for further administrative proceedings consistent with the order of the <u>court</u>."  <u>Id.</u> at *2 (emphasis added).  Most importantly, the court notes that because the evidence in this case contains objective medical evidence suggestive of conversion disorder, the ALJ found a severe conversion disorder and discussed that evidence (R. 21-26) but he did not rely on the objective medical evidence to discount Plaintiff's allegations of disabling symptoms.

10

Rather, the ALJ looked to evidence regarding the severity of Plaintiff's limitations noting, "Other than the relatively mild medical findings and medical opinions listed above, there is <u>other evidence</u> in the record that undermines the alleged severity of the claimant's impairments." (R. 27) (emphasis added). The ALJ then explained the extensive activities and abilities of Plaintiff as demonstrated by the record evidence. <u>Id.</u> He noted the inconsistency between Plaintiff's allegations of limitations "and the observations from her friend who reported a significantly less severe degree of limitation." <u>Id.</u> He noted that Plaintiff's "family members have also observed her to exaggerate symptoms when being seen by medical providers" and "physicians have noted that the claimant's symptoms are 'effort dependent,' meaning that she has a significantly greater degree of functionality when she makes an effort to do so." <u>Id.</u> Finally, he noted Plaintiff's inconsistent reports to her physicians, particularly incidents where she went "so far as to describe the same accident with dramatic differences to her treating sources." <u>Id.</u> Each of these findings is supported by the ALJ's citation to supporting evidence in the record. It is clear the ALJ did not rely on "what one would expect when one is confronted with the medical records of an individual with a somatoform disorder," 2013 WL 27640, at *8, but on inconsistencies in the record evidence tending to suggest that Plaintiff's limitations resulting from her conversion disorder are not as severe as she alleges. This is not erroneously relying on medical evidence one would expect to confirm conversion disorder. It is relying on evidence of inconsistencies suggesting lesser limitations than alleged. Plaintiff has shown no error.

11

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 17, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
